UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIA MOTORS AMERICA, INC.

    Plaintiff,

v.

GLASSMAN OLDSMOBILE SAAB HYUNDAI, INC.,

    Defendant.
_____/

Case No.  11-12090

SENIOR UNITED STATES DISTRICT JUDGE
ARTHUR J. TARNOW

MAGISTRATE JUDGE MARK A. RANDON

<u>ORDER GRANTING PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIM AND
DENYING DEFENDANT'S MOTION TO DISMISS</u>

Before the Court are Plaintiff's Motion to Dismiss Counterclaim and for Judgment on the Pleadings [13] and Defendant's Motion to Dismiss and for Judgment on the Pleadings [15].  This case concerns a franchise agreement between franchiser Kia Motors America, Inc. ("Kia") and franchisee Glassman Oldsmobile Saab Hyundai, Inc. ("Glassman") and application of the Michigan Motor Vehicle Dealers Act.  Both parties move to dismiss and for judgment on the pleadings.  The court heard argument on these motions at a hearing on January 18, 2012.  For the reasons stated below, Kia's Motion to Dismiss and for Judgment on the Pleadings is GRANTED.  Glassman's motions are DENIED.

**I. Factual Background**

*A. The Sales and Service Agreement Between Kia and Glassman*

Kia sells and distributes Kia brand vehicles, parts, and accessories.  Kia also enters into franchise agreements with authorized dealers to sell Kia products.  Kia's relationship with its authorized dealers is governed by a Sales and Services Agreement ("SSA"), which sets out a number of obligations for both parties.  Kia entered into an SSA with Glassman on December 16, 1998.

Among other terms, the SSA authorizes a dealership to operate at a specific location or locations "and no others." The SSA states that each dealer's area of primary responsibility with regards to sales and marketing "may be altered or adjusted by [Kia] at any time." Further, the SSA states that no dealer has the "exclusive right" to sell in "any specified geographic area." Kia also "expressly reserves the unrestricted right . . . to grant others the right to sell Kia products, whether or not in competition with [Glassman]." Finally, the SSA states that "[a]s permitted by applicable law, [Kia] may add new dealers, relocate dealers into or remove dealers from the APR [area of primary responsibility] assigned to [Glassman]." The SSA between Kia and Glassman authorizes Glassman to sell Kia products at a dealership in Southfield, Michigan.

*B. Michigan Law at the time of the Franchise Contract*

Michigan's Motor Vehicle Dealer Act ("the Act"), Mich. Comp. Laws § 445.1561, *et seq.*, regulates automobile dealers and the franchise relationship in a large number of ways. Most importantly to this case, the Act protects dealers from competition, both from the manufacturer and from new entrants to the local market. Specifically, the Act contains an "anti-encroachment" provision, which applies to a manufacturer or distributor such as Kia when said manufacturer wishes to establish a new dealer or relocate an existing dealer within the "relevant market area" of an already-existing dealer. Mich. Comp. Laws § 445.1576. Mich. Comp. Laws § 445.1566(a) (1998) defined the "relevant market area" as being within six miles[1] of an already-existing dealer. If Kia wishes to establish a new dealer or relocate an already-existing dealer within the relevant market

---

[1] The range is variable based upon the population of the county. However, Oakland County is, and has been, well within the smaller relevant market area mile range based on its population of over 150,000 persons.

area of a pre-existing dealer, it is required to give notice to existing dealers. Already-existing dealers are then allowed thirty (30) days to file a declaratory action in state court to determine whether "good cause" exists for establishing a new dealership in the area.[2] This six-mile relevant market area was in place when Kia and Glassman entered into the SSA, and was the law from 1981 to 2010.[3]

*C. 2010 Amendment to the Michigan Law*

In 2010 the Michigan legislature amended the Act to enlarge the "relevant market area." The amendment, which amended the definition of "relevant market area," stated that it was intended "to become effective immediately," and took effect on August 4, 2010. 2010 Mich. Pub. Acts No. 139. The amended Act thus creates a "relevant market area" of nine (9) miles. Mich. Comp. Laws §§ 445.1566(a); 445.1576.

*D. Kia's Intent to Create a New Franchisee*

On August 20, 2010 Kia verbally contacted Glassman to inform Glassman that it intended to establish a dealership in Troy, Michigan. Said dealership is intended to be located seven (7) miles from the Glassman dealership. Kia requested that Glassman "waive" his right under the Act to object to the new location. Glassman, by letter on August 23, 2010, refused. The parties agree that Kia has not sent the required notice under the Act, as Kia does not believe the anti-encroachment section of the Act applies to this case.[4]

---

[2] The Act sets out various factors that constitute "good cause." None are relevant to this action.

[3] The Act was amended in 1983, 1998, 2000, and 2010. Only the 2010 amendment modified the relevant market area.

[4] Glassman argues, in a single footnote, that by requesting that Glassman waive his right to object to the new placement, Kia has waived its right to object that the 2010 amendment to the Act applies to the contract between Kia and Glassman. This argument has no merit. Even if

**II. Procedural History**

Kia filed this action for declaratory relief on May 11, 2011, asking this Court to determine whether the 2010 amendment to the Act applies to Kia's intention to authorize a new Kia dealership. Glassman filed an Answer [7] and Counterclaim [8] on June 2, 2011, seeking declaratory relief. Kia's Motion to Dismiss and for Judgment on the Pleadings [13] was filed on July 22, 2011. Glassman's response and Counterclaim Motion to Dismiss and for Judgment on the Pleadings [15] were filed on September 12, 2011.

**III. Analysis**

*A. Presumption that Statutes are Prospective*

Under clearly-settled Michigan law, statutes and amendments to statutes are "presumed to operate prospectively unless the contrary intent is clearly manifested." *See, e.g., Frank W. Lynch & Co. v. Flex Tech., Inc.*, 624 N.W.2d 180, 182 (Mich. 2001) (quoting *Franks v. White Pine Copper Div.*, 375 N.W.2d 715, 731 (Mich. 1985)). This "is especially true if retroactive application of a statute would impair vested rights [or] create [] new obligations and impose a new duty . . . ." *Id.* (quoting *Franks*, 375 N.W.2d at 371). The Michigan Supreme Court has interpreted the fact that the legislature includes no express language regarding retroactivity as demonstrating an intent that the law apply only prospectively. *See Frank W. Lynch*, 624 N.W.2d at 183. The Michigan Supreme Court has also noted that "the Legislature has shown on several occasions that it knows how to make clear its intention that a statute apply retroactively." *Id.*; *see also* 2007 Mich. Pub. Acts. No. 105 (stating that "[t]his amendatory act is curative and shall be retroactively applied . . ."). Preventing unintended retroactivity is important "when a new statutory provisions affects contractual rights–an

---

Kia's request is construed as conceding that the 2010 amendment applies, Kia is not legally bound by positions taken in informal (apparently verbal) communication.

area 'in which predictability and stability are of prime importance.'" *Frank W. Lynch*, 624 N.W.2d at 184 (quoting *Landsgraf v. USI*, 511 U.S. 244, 271 (1994)).

Kia argues that the 2010 amendment to the Act was not intended by the legislature to apply retroactively. Glassman conceded at oral argument that the amendment is silent with respect to any intention of retroactivity. Nevertheless, Glassman argues that the amendment's language that it takes "immediate effect" signals an intent that it apply retroactively. This language, however, is designed to avoid a provision of the Michigan Constitution that delays the effective date of new legislation unless the Legislature votes to give immediate effect to new legislation. *See* Mich. Const. 1963, Art. IV, § 27. The Michigan Supreme Court has also acknowledged the difference between immediate effect and retroactivity. *See Pohutski v. City of Allen Park*, 641 N.W.2d 219, 234 (Mich. 2002) (finding that a law "does not contain any language indicating it is meant to apply retroactively, but provides only that it is to take immediate effect").

The Sixth Circuit considered whether the Michigan Motor Vehicle Dealers Act applied retroactively to contracts executed before the Act's effective date in *Dale Baker Oldsmobile v. Fiat Motors of N. Am.*, 794 F.3d 213 (6th Cir. 1986). In *Dale Baker*, the Plaintiff sought application of the newly-enacted Dealers Act to the termination of the franchise agreement between the dealer Defendant and the Plaintiff. The Act requires that, upon termination of any dealer agreement, the dealer must be paid fair and reasonable compensation by the manufacturer or distributor for new vehicles, supplies, and equipment purchased from the manufacturer or distributor. The court found that the Act created substantial new duties for manufacturers and gave substantive new rights to dealers; this, combined with a lack of explicit retroactivity, led the Sixth Circuit Court of Appeals to find that the Act applied only prospectively and not to contracts bargained for and agreed upon prior to the Act's 1981 enactment. *Id.* at 220-21.

Glassman argues that *Dale Baker* is distinguishable for two reasons: First, because the amendment is procedural and/or remedial in nature, rather than substantive, and thus constitutes an exception to the presumption against retroactivity. This argument is discussed in more detail below. Second, Glassman argues that *Dale Baker* involved the creation of an entirely new statute, rather than an amendment to a statute. Glassman offers no authority for the distinction that an amendment should be applied retroactively when a statute should be presumed to apply only prospectively, nor is the argument reasonable. Statutes are presumed to apply prospectively because, particularly with respect to contracts, retroactive application of a statute deprives parties of notice and the opportunity to bargain within the confines of existing law, and creates additional impairments on parties without the benefit of consideration.

The court finds this same reasoning applicable to amendments. The United States Court of Appeals for the Seventh Circuit considered precisely this issue in *Ace Cycle World, Inc. v. American Honda Motor Co.*, 788 F.2d 1225 (7th Cir. 1986). In *Ace*, the court considered whether a 1983 amendment to the Illinois Motor Vehicle Franchise Act, modifying the relevant market area (just as in this case) should apply retroactively. The Seventh Circuit determined that the amendment should apply prospectively only. 788 F.2d at 1228. The court finds this reasoning persuasive.

B. Exception if Law Procedural in Nature

There is an exception to the presumption that statutes or amendments are not retroactive: when statutes are remedial or "have affected procedural rights or rights incident to substantive rights," and do not "create substantive rights that had no prior existence in law or contract." *Dale Baker*, 794 F.3d 213 at 217.

In *Dale Baker*, the Sixth Circuit determined that one particular section of the Act created substantive, rather than procedural, rights. The parties in *Dale Baker* had a franchise contract term

-6-

that allowed for termination of the agreement with simple 30-day written notice. The Act created a new 60-day notice requirement as well as a showing of good cause for termination. The court found that this constituted a "substantive right" which gave new rights or duties to the franchisee, a right that had not been "bargained for." 794 F.3d at 219. Application of a new substantive right retroactively, the Court found, would likely violated the Contract Clause. As a contrast, the *Dale Baker* court presented the example of a statute which gave third party beneficiaries the right to sue directly to enforce a contract. Application of this statute retroactively was permissible because "the statute did not enlarge the duties of the defendant, but merely changed the method of enforcement." *Id.* (discussing *Guardian Depositors Corp. v. Brown*, 287 N.W. 798 (Mich. 1939)).

Defendant argues that the expansion of the range of the relevant market area is similar to *Hansen-Snyder Co. v. Gen. Motors Corp.*, 124 N.W.2d 286 (Mich. 1963). In *Hansen-Snyder*, the Michigan Supreme Court found that an amendment to the Mechanic's Lien Act extending the time to file a lien from 60 to 90 days was remedial in nature, and thus retroactive. Defendant argues that the extension of time to file a lien is similar to increasing the radius of the relevant market area in the Dealers Act, characterizing both as "merely increas[ing] that protection by fifty percent." The court rejects this strained reasoning. The extension of time to file a lien involves increasing the time to utilize an already-existing right; the extension is therefore remedial in nature. In contrast, without the 2010 amendment, Glassman would have no right to protest Kia's authorization of a new dealer. The amendment quite literally "enlarge[s] the duties" of Kia by expanding the "relevant market area" of Glassman's dealership. This would serve as a constraint on Kia's ability to authorize new dealers.

The court therefore finds that the 2010 amendment to the Michigan Motor Vehicle Dealers Act expanding the "relevant market area" from six to nine miles is substantive in nature, creating a new duty for manufacturers. The presumption against retroactivity applies.

C. Arguments Regarding Contract Terms

Glassman argues, as an alternative to retroactivity of the 2010 amendment, that the lack of a contractual term setting out a mileage restriction or definition of a "relevant market area" in the SSA restricts Kia's ability to authorize a new dealership. The court finds this argument without merit. The SSA references an "Area of Primary Responsibility" which tasks Glassman with selling and marketing within a specific area that "may be altered or adjusted" by Kia at any time. The SSA states that "[a]s permitted by applicable law, [Kia] may add new dealers to, relocated dealers into, or remove dealers from the APR assigned to [Glassman]." Essentially, Kia reserves to itself the right to authorize new dealers, except as prohibited by "applicable law."

Glassman next argues that the term "applicable law" is meant to reference the law at whatever time the contract is read–essentially, that the contract is forward-looking and intentionally takes into account changes in the law. General precepts of contract law, however, indicate that courts should not, absent clear language and evidence of the intent of the parties, find that a contract incorporates future changes to the law. Rather, contracts are generally assumed to incorporate only law existing at the time the contract is made. The case most directly on point in is *Rutherford Farmers Coop. v. MTD Consumer Group, Inc.*, 124 F. App'x 918 (6th Cir. 2005), in which the court interpreted whether a contract clause that "[i]f any other state or federal law applies which directly contradicts any provision of this Agreement, said law shall be deemed part of the Agreement" represented a "clear expression that the contract [would] be amended by subsequent statutory enactments." 124 F. App'x at 920. The court, referencing Tennessee law and the general concept that contractual terms should be interpreted "with the same sense and meaning as the parties," found that the contract was not intended to take into account future changes in the law. *Id.* "Because [the provision at issue] does not refer to future laws, that clause, taken in its 'plain, ordinary, and popular

-8-

sense,' incorporates only laws existing at the time of contract formation." *Id.* (quoting *Energy Reserves Grp., Inc. v. Kan. Power & Light Co.*, 459 U.S. 400, 405 (1983) (contract incorporating future laws specifically stated that it incorporated "relevant present and future state and federal laws")). The Sixth Circuit found that "[s]ince the plain meaning [of the contract term] fails to support an agreement to be bound by future changes in the law, we will not infer one." 124 F. App'x at 920 (citing 11 Richard A. Lord, Williston on Contracts § 30:23 (4th ed. 2004) ("[C]hanges in the law subsequent to the execution of a contract are not deemed to become part of agreement unless its language clearly indicates such to have been intention of parties")); *see also Cummings, McGowan & West, Inc. v. Wirtgen Am., Inc.*, 160 F. App'x 458 (6th Cir. 2005) (contract term severing any provision of contract that "may be prohibited by law" did not intend to incorporate future changes in Tennessee law, merely demonstrated parties' uncertainty about then-governing law).

Glassman advances the argument that the court cannot look the to pre-2010 version of the Michigan Auto Vehicle Dealers Act in interpreting the SSA because previous laws "cease to exist" when an amendment or subsequent statute is passed. *Lahti v. Fosterling*, 99 N.W.2d 490, 495 (Mich. 1959). The court notes that, if said quote was treated literally, each and every amendment to a statute would apply retroactively, as no court would be ale to reference a past version of a statute. This is not *Lahti*'s holding. In *Lahti*, the Michigan Supreme Court explicitly found that the amendment it was considering was remedial in nature, rather than substantive, as is the amendment at issue in the instant case. *Id.* at 494. The court in *Lahti* therefore found the amendment applied retroactively. Moreover, more recent cases from the Michigan Supreme Court case doubt on *Lahti*'s broad language. *See, e.g., White v. Gen. Motors Corp.*, 429 N.W.2d 576, 580 (Mich. 1988) (discussing *Lahti* and finding that substantive amendment to statute should be applied prospectively).

-9-

Kia notes that, in 1998, when the parties bargained over and entered into the contract, it was with the understanding that the "applicable law" referenced was the six-mile relevant market area. Notably, Glassman acknowledges that "[w]here the parties entered into the SSA with the knowledge of this statutory restriction [referring to the 6-mile relevant market area] and took into consideration the limitation that 'applicable law' placed on its right, the parties clearly factored that into their negotiation of the SSA." Reply Br. of Def. at 2. As Glassman acknowledges, the parties bargained over each of the terms of the contract. Kia reserved for itself the right to authorize other dealers, and declaimed any responsibility to protect Glassman from competition within any proscribed geographic area, and also recognized the limitations placed on it by "applicable law." The parties did not clearly manifest an intent to incorporate future changes in the law into the contract. Thus, the court finds that the parties intended to take into account the law at the time the contract existed, but that Kia otherwise reserved all available legal power to create new dealerships absent limitation by the current law.

The court therefore declines to find that reference to "applicable law" constitutes an intention on the part of the parties that the contract will incorporate future changes in the law. Accordingly, the court finds that the "relevant market area" within which Glassman is accorded the right to object under Mich. Comp. Laws § 445.1576 is six miles.

D. Contract Clause

Kia argues, in the alternative, that application of the 2010 amendment would violate the Contract Clause of both the Michigan and United States Constitution. Because the 2010 amendment to the Michigan Motor Vehicle Dealers Act does not apply retrospectively, however, the court need not reach this question.

**IV. Conclusion**

As the new dealership that Kia seeks to authorize is outside of this relevant market area, the court finds that Kia need not give notice to Glassman of its intent to authorize a new dealership, that Glassman lacks the right to object according to Mich. Comp. Laws § 445.1576, and that the addition of a new dealership seven miles from the location of Glassman does not violate Glassman's statutory or contractual rights.

The Court being fully advised in the premises, and for the reasons stated above,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss and for Judgment on the Pleadings [15] is **DENIED**. Plaintiff's Motion to Dismiss and for Judgment on the Pleadings [13] is **GRANTED**.

All matters having been resolved by resolution of the instant motions, the case is closed.

**SO ORDERED**.

                                                  s/Arthur J. Tarnow
                                                  Arthur J. Tarnow
                                                  Senior United States District Judge

Dated: January 23, 2012

---

**CERTIFICATE OF SERVICE**

I hereby certify on January 23, 2012 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on January 23, 2012: **None.**

                                                 s/Michael E. Lang
                                                 Deputy Clerk to
                                                 District Judge Arthur J. Tarnow
                                                 (313) 234-5182